**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

S.B., BY AND THROUGH HER MOTHER, S.B.,

    Plaintiff,

v.

JEFFERSON PARISH SCHOOL BOARD,
CHRISTI ROME,
JANINE ROWELL, and
LESLEY NICK,

    Defendants.

Case No. 2:21-cv-217
Hon. Mary Ann Vial Lemmon
Mag. Judge Donna Phillips Currault
Jury Demanded

# FIRST AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

## PRELIMINARY STATEMENT

1. This case involves unlawful corporal punishment against a child with a disability. The plaintiff—an eleven-year-old girl with autism—has been slapped by not one, but two different teachers at her school. One of them struck her on multiple occasions.

2. Neither the Jefferson Parish School Board nor the principal at Plaintiff's school require school officials to undergo any training with regard to their obligations not to use corporal punishment under federal and state disability laws.

3. Neither teacher in this case was fired. Instead, it is the policy of the Jefferson Parish School Board to simply transfer teachers who hit students to another school.

4. This is a civil action for declaratory relief, injunctive relief, monetary damages, and punitive damages to redress disability-based discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, La. Rev. Stat. §§ 46:1953, 46:2254, 51:2247, the Individuals with Disabilities Education Act, 20

U.S.C. § 1400, *et seq*, and La. Const. art. I, § 12. Plaintiff also asserts federal constitutional claims under 42 U.S.C. § 1983, and tort claims under Louisiana law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 20 U.S.C. § 1400; 29 U.S.C. § 794; 42 U.S.C. §§ 1983, 12132; and 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

7. Plaintiff, a minor child, is a person with a disability and a resident of Louisiana.

8. Plaintiff has a "disability," as defined by 20 U.S.C. § 1401(3), 42 U.S.C. § 12102, 29 U.S.C. § 705(20), and La. Rev. Stat. §§ 46:1952(2), 46:2253(12), 51:2232(3)(a).

9. Plaintiff is a "person aggrieved" under 29 U.S.C. § 794a(a)(2) and La Rev. Stat. § 46:1956(C), a "person alleging discrimination on the basis of disability" under 42 U.S.C. § 12133, a person "subject to unlawful discrimination" under La. Rev. Stat. 46:2256(B), and a "person deeming h[er]self injured" under La. Rev. Stat. § 51:2264.

10. Plaintiff is a person "depriv[ed]" of her rights "secured by the Constitution" under 42 U.S.C. § 1983.

11. Defendant Jefferson Parish School Board is the school board for Jefferson Parish, Louisiana, consistent with La. Rev. Stat. 17:51. Its principal place of business is 501 Manhattan Blvd, Harvey, LA, 70058.

12. Defendant Christi Rome is the Principal of Walter Schneckenburger Elementary School. Plaintiff brings these claims against her in both her official and individual capacities.

13. Defendant Janine Rowell is an employee of Jefferson Parish Public School System, which was created by the Jefferson Parish School Board. She was a special education teacher at Walter Schneckenburger Elementary School. Plaintiff brings these claims against Rowell in her individual capacity.

14. Defendant Lesley Nick is an employee of Jefferson Parish Public School System and was a special needs paraprofessional at Walter Schneckenburger Elementary School. Plaintiff brings these claims against Nick in her individual capacity.

**FACTUAL ALLEGATIONS**

15. Walter Schneckenburger Elementary School is a public school in Jefferson Parish, operating under the jurisdiction of the Jefferson Parish Public School System. It is located at 26 Earnest Ave, Kenner LA 70065.

16. Christi Rome is the Principal of Schneckenburger Elementary.

17. Plaintiff is an eleven-year-old girl with autism, also known as autism spectrum disorder.

18. Autism is a "disability" under federal and Louisiana antidiscrimination laws, because it substantially limits one or more major life activities.

19. Louisiana law strictly forbids school officials from using corporal punishment against any "student with an exceptionality" or any "student who has been determined to be eligible for services under Section 504 of the Rehabilitation Act of 1973 and has an Individual Accommodation Plan." La. Rev. Stat. § 17:416.1(B)(2).

20. There is never any justification for slapping a child with autism, because there is no state interest in administering corporal punishment against children with disabilities.

21. The Jefferson Parish School Board has no training or policies in place to ensure that school officials refrain from using corporal punishment against students with disabilities.

22. Corporal punishment against a child with a disability is considered "abuse" under the Louisiana Children's Code, Article 603.

23. The Louisiana Children's Code requires that school employees immediately report alleged or suspected child abuse and/or neglect to the Department of Children and Family Services (DCFS) or law enforcement as a mandated reporter. La. Child. Code art. 609–10.

24. Principal Rome is a "mandatory reporter" under the Louisiana Children's Code. La. Child. Code art 609.

25. Principal Rome has a duty to ensure that school employees at Schneckenburger Elementary receive proper training, including training school officials' obligations to students with disabilities under state and federal law.

26. Principal Rome is also responsible for overseeing school employees and ensuring that they follow all laws, regulations, school policies, and the U.S. Constitution.

27. Plaintiff's autism causes her to occasionally exhibit inappropriate behavior, such as pinching and kicking.

28. Plaintiff is a student at Schneckenburger Elementary.

29. Because of her disability, Plaintiff is shadowed at school by a special needs paraprofessional (SNP), which is a person charged with assisting teachers in making sure a child's education complies with the child's individualized education plan.

30. The Jefferson Parish School Board contracts with a private company called Autism Spectrum Therapies to provide ABA therapy to children during school hours.[1]

---

[1] ABA stands for "applied behavioral analysis," a form of therapy for people with autism or similar disorders that can improve social, communication, and learning skills through positive reinforcement.

### *First incident of hitting: Janine Rowell*

31. Janine Rowell was a special education teacher at Schneckenburger Elementary, hired in or around the beginning of 2020.

32. Ms. Rowell was assigned to Plaintiff's classroom.

33. From the outset, Ms. Rowell demonstrated little to no patience for Plaintiff and Plaintiff's special needs. Sometimes she would scream at Plaintiff. Other times, she would simply ignore Plaintiff and refuse to help Plaintiff with her schoolwork.

34. At around 1:30 pm on Friday, February 7, 2020, Plaintiff was in her classroom receiving therapy from an ABA behavioral technician.

35. Plaintiff was sitting on floor and refused to stand up to clean up puzzle pieces. Her behavioral technician approached Plaintiff to help her up, but Plaintiff kicked towards her, though without making contact.

36. Ms. Rowell then intervened and began slapping Plaintiff's wrists, saying "No, ma'am! No kicking!"

37. Two SNPs in the room at the time witnessed Ms. Rowell slapping Plaintiff's wrists, including Plaintiff's SNP.

38. Neither of the two SNPs reported the abuse to any school authorities.

39. Later that afternoon, the ABA behavioral technician told her manager at Autism Spectrum Therapies about the incident.

40. Three days later, at 11:00 am on Monday, February 10, 2020, the manager from Autism Spectrum Therapies emailed Christi Rome, the principal at Schneckenburger Elementary. The email recounted the events of the previous Friday as described by the behavioral technician.

41. Upon receiving this email, Principal Rome requested statements from all the adults in the room at the time, including the ABA behavioral technician, the two SNPs in the classroom at the time, and Ms. Rowell herself.

42. Principal Rome did not contact the police or DCFS.

43. Contrary to the Jefferson Parish Public School guidelines and the school handbook, Principal Rome did not remove Ms. Rowell from the classroom. She remained in the classroom with Plaintiff for the remainder of the school day.

44. At around 1:00 pm that day, Autism Spectrum Therapies sent Principal Rome a formal incident report.

45. Plaintiff's mother did not learn of the incident until around 2:00 pm on Monday, February 10, 2020, after the manager from Autism Spectrum Therapies emailed her about it.

46. After receiving the email from Autism Spectrum Therapies, Plaintiff's mother called the police and drove to the school, where she arrived around 3:00 pm.

47. Around the same time, an officer from the Kenner Police Department arrived at the school.

48. Plaintiff's mother and the Kenner Police officer entered Principal Rome's office together.

49. The responding police officer and Principal Rome knew each other personally.

50. Plaintiff's mother requested a police report. In response, Principal Rome expressed irritation at the request and said, "That's not necessary."

51. Plaintiff's mother replied, "It's my right to have a police report filed."

52. Plaintiff asked Principal Rome why she hadn't called the police right away after learning of the incident. Principal Rome responded that she had not yet had time to perform an internal investigation into the allegation.

53. The police officer also expressed hesitation about filing a report.

54. Plaintiff's mother told the officer, "If you won't file the police report, I will find another officer who will. My brother is a police officer."

55. The police officer then agreed to write a report.

56. The officer was unable to interview Ms. Rowell.

57. The police report reflects that Plaintiff's mother told the officer that she was not interested, at that time, in pressing charges against Ms. Rowell.

58. Later that day, Principal Rome received signed statements from all the adults in the room at the time, including the two SNPs in the classroom at the time and Ms. Rowell herself.

59. Ms. Rowell denied any wrongdoing or that she slapped Plaintiff's wrists.

60. One of the SNPs said she witnessed Ms. Rowell grab Plaintiff's wrists and use a stern voice, but did not witness any slapping.

61. The other SNP stated that she witnessed Ms. Rowell grab Plaintiff's wrists, and, after Plaintiff resisted, she witnessed Ms. Rowell slapping Plaintiff's wrists. This SNP also stated in her letter that she had also witnessed Ms. Rowell slapping Plaintiff's wrists in this same manner two weeks prior.

62. The second SNP had not reported the prior incident of slapping to any school authorities.

63. The next day, Ms. Rowell was no longer in the classroom.

64. Principal Rome did not suspend Ms. Rowell. Instead, she referred the matter to Human Resources.

65. Ms. Rowell was not discharged by Jefferson Parish Public School System. Instead, she was transferred to another school within the school system.

66. Ms. Rowell was not reprimanded in any way for her actions.

67. Ms. Rowell slapped Plaintiff because of Plaintiff's disability.

68. Ms. Rowell knew, or reasonably should have known, that federal and state law prohibit slapping children with disabilities.

69. Other parents were not informed of the events that had taken place or the reason for Ms. Rowell's removal. Rather, over a month after Ms. Rowell's removal, Principal Rome informed the parents that there was a "vacancy" in their children's classroom.

70. For almost two months, there was no teacher in Plaintiff's classroom. As a result, Plaintiff and her classmates were taught only by SNPs, not teachers, denying Plaintiff a free appropriate public education.

71. Principal Rome's actions were taken because of, or with deliberate indifference to, Plaintiff's disability.

*Second incident of hitting: Lesley Nick*

72. In November 2020, Lesley Nick was an SNP at Schneckenburger Elementary who had recently been assigned to shadow Plaintiff.

73. On the morning of November 18, 2020, Plaintiff was working with her ABA therapist on spelling, and Ms. Nick was assisting Plaintiff in choosing the correct letters.

74. At some point during the session, Plaintiff reached out and pinched Ms. Nick's neck.

75. In response, Ms. Nick grabbed Plaintiff's hand and slapped the top of it, saying "We do not pinch our friends."

76. The special education teacher assigned to Plaintiff's classroom that day witnessed Ms. Nick slapping Plaintiff's hand and immediately reported the incident to Principal Rome.

77. Principal Rome called Plaintiff's mother right away after the second incident, and immediately removed Ms. Nick from the classroom.

78. Principal Rome did not contact the police or DCFS.

79. Ms. Nick no longer works at Schneckenburger Elementary.

80. Ms. Nick was not fired.  Rather, Jefferson Parish Public School System transferred her to another school.

81. Ms. Nick was not reprimanded in any way for her actions.

82. Ms. Nick slapped Plaintiff because of Plaintiff's disability.

83. Ms. Nick knew, or reasonably should have known, that state and federal laws prohibit slapping children with disabilities.

84. Schneckenburger Elementary has no policies or training in place to prevent teachers from using corporal punishment.

85. Principal Rome did not implement, conduct, or oversee any training of teachers at Schneckenburger Elementary with regard to corporal punishment.

86. Jefferson Parish School Board does not have any policies in place to train its employees on their obligation not to use corporal punishment against students with disabilities.

87. Jefferson Parish School Board has a policy of transferring teachers who hit students to other schools, without notifying the parents of those children that the teacher was transferred because of hitting a student.

88. Jefferson Parish School Board is vicariously liable for the wrongdoing of its employees.

89. Jefferson Parish School Board and Christi Rome acted with deliberate indifference to their duty to train employees not to use corporal punishment against students with exceptionalities.

90. The individual defendants were acting as agents of the Jefferson Parish School Board.

91. Non-disabled students at Schneckenburger Elementary are not subjected to corporal punishment.

92. Defendants Nick and Rowell have not slapped any students who do not have disabilities.

**FIRST CLAIM – Disability Discrimination (Section 504 of the Rehabilitation Act)**

93. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

94. Defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, because it is a recipient of federal funds, and it discriminated against Plaintiff solely on the basis of her disability.

95. Defendant treated Plaintiff less favorably because of her disability and knowingly allowed a hostile education environment on the basis of her disability.

96. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

97. Plaintiff suffered injuries as a result of Defendant's conduct.

98. Plaintiff asserts this claim against Jefferson Parish School Board.

**SECOND CLAIM – Disability Discrimination (ADA)**

99. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

100. Defendant violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because it is a public entity that discriminated against Plaintiff on the basis of her disability.

101. Defendant treated Plaintiff less favorably because of her disability and knowingly allowed a hostile education environment on the basis of her disability.

102. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

103. Plaintiff suffered injuries as a result of the Defendant's conduct.

104. Plaintiff asserts this claim against Jefferson Parish School Board.

**THIRD CLAIM – Disability Discrimination (La. Rev. Stat. § 46:1953)**

105. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

106. Defendant violated La. Rev. Stat. § 46:1953 because it denied a "person with a disability" the same rights "as a person who is able-bodied."

107. Defendant treated Plaintiff less favorably because of her disability and knowingly allowed a hostile education environment on the basis of her disability.

108. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

109. Plaintiff suffered injuries as a result of Defendant's conduct.

110. Plaintiff asserts this claim against Jefferson Parish School Board.

### FOURTH CLAIM – Disability Discrimination (La. Rev. Stat. § 51:2247)

111. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

112. Defendants violated La. Rev. Stat. § 51:2247 because they "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

113. Defendants treated Plaintiff less favorably because of her disability and knowingly allowed a hostile education environment on the basis of her disability.

114. The discriminatory actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

115. Plaintiff suffered injuries as a result of Defendants' conduct.

116. Plaintiff asserts this claim against all Defendants.

### FIFTH CLAIM – Disability Discrimination (La. Rev. Stat. § 46:2254)

117. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

118. Defendant violated La. Rev. St. § 46:2254 because it "discriminate[d] against … an individual enrolled as a student at the institution on the basis of a disability."

119. Defendant treated Plaintiff less favorably because of her disability and knowingly allowed a hostile education environment on the basis of her disability.

120. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

121. Plaintiff suffered injuries as a result of Defendant's conduct.

122. Plaintiff asserts this claim against Jefferson Parish School Board.

**SIXTH CLAIM – Failure to Provide a Free and Appropriate Public Education (IDEA)**

123. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

124. Defendant violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*, because it failed to provide a free and appropriate education.

125. Plaintiff suffered injuries as a result of Defendant's conduct.

126. Plaintiff asserts this claim against Jefferson Parish School Board.

**SEVENTH CLAIM –Substantive Due Process (42 U.S.C. § 1983)**

127. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

128. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

129. The Defendants violated Plaintiff's right to substantive due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, namely, her right to bodily integrity.

130. The Defendants knew or should have known that their actions were unconstitutional.

131. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

132. The Defendants' actions caused Plaintiff damages.

133. Plaintiff asserts this claim against all Defendants.

## EIGHTH CLAIM (42 U.S.C. § 1983 – Excessive Force)

134. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

135. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

136. The Defendants violated Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution by using unjustified force against her.

137. The Defendants knew or should have known that their actions were unconstitutional.

138. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

139. The Defendants' actions caused Plaintiff damages.

140. Plaintiff asserts this claim against all Defendants.

## NINTH CLAIM (42 U.S.C. § 1983 – Equal Protection)

141. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

142. The Defendants are "person[s]" acting under color of state law under 42 U.S.C. § 1983.

143. The Defendants violated Plaintiff's Equal Protection rights under the Fourteenth Amendment by treating her less favorably than non-disabled students on the basis of her disability and knowingly allowing a hostile education environment on the basis of her disability.

144. There was no rational basis for the Defendants' unequal treatment of Plaintiff.

145. The Defendants knew or should have known that their actions were unconstitutional.

146. The actions of Defendants were intentional and taken with deliberate indifference to Plaintiff's rights.

147. The Defendants' actions caused Plaintiff damages.

148. Plaintiff asserts this claim against all Defendants.

### TENTH CLAIM (Louisiana Battery)

149. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

150. The Defendants committed battery against Plaintiff, because they made a harmful or offensive contact with Plaintiff and intended to cause Plaintiff to suffer such a contact. *See Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987).

151. Plaintiff suffered injuries as a result of Defendants' conduct.

152. Plaintiff asserts this claim against all Defendants.

### ELEVENTH CLAIM (Negligence)

153. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

154. The Defendants had a duty to Plaintiff to conform their conduct to a specific standard of care, and their conduct fell below that standard of care.

155. The standard of care is set by statute. Because the Defendants' conduct fell below that standard, their conduct constitutes negligence per se.

156. The Defendants' negligence caused Plaintiff damages.

157. Plaintiff asserts this claim against all Defendants.

### TWELFTH CLAIM (Negligence – Failure to Supervise/Train)

158. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

159. The Defendants had a duty to train and supervise their employees to conform their conduct to a specific standard of care, and the Defendants breached that duty.

160. The Defendants' negligence caused Plaintiff damages.

161. Plaintiff asserts this claim against Jefferson Parish School Board and Christi Rome.

### THIRTEENTH CLAIM (42 U.S.C. § 1983 – Failure to Train)

162. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

163. The Defendants' training policies with regard to corporal punishment for special education students are insufficient.

164. The Defendants were deliberately indifferent to this insufficiency in adopting their policies.

165. The insufficiency of the policies was the moving force behind the violations of Plaintiff's constitutional rights.

166. The Defendants knew or should have known that their failure to adequately train its employees would cause a constitutional violation.

167. The Defendants had actual or constructive notice of a pattern of similar constitutional violations caused by the policies.

168. Plaintiff asserts this claim against Jefferson Parish School Board and Christi Rome.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendants' conduct as set forth above violates 29 U.S.C. § 794; 42 U.S.C. § 12132; 20 U.S.C. § 1414; and La. Rev. Stat. §§ 46:1953, 46:2254, & 51:2247.

2. Declaring that Defendants' conduct violates Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

3. Declaring that Defendants are liable for Louisiana battery and negligence;

4. Declaring that defendants Jefferson Parish School Board and Christi Rome are liable for negligence and failure to train;

5. Entering an injunction directing that Defendants and their officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendants, take all affirmative steps necessary to remedy the effects of the illegal,

discriminatory, and tortious conduct alleged herein and to prevent similar occurrences in the future;

6. Awarding compensatory damages to Plaintiff for injuries caused by Defendants' discriminatory and tortious conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions.

7. Awarding punitive damages to Plaintiff for injuries caused by Defendants' discriminatory and tortious conduct, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12188, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions.

8. Awarding costs and attorney's fees to Plaintiff, pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, La. Rev. Stat. § 46:1956, La. Rev. Stat. § 46:2256, La. Rev. Stat. § 51:2264, and any other applicable provisions;

9. Requiring that Defendants put into place policies and training to prevent corporal punishment from occurring in the future;

10. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which she is entitled.

Respectfully submitted,

June 4, 2021

__/s/ Chris Edmunds_____

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F

                    Metairie LA 70001
                    (504) 314-0034
                    chrisedmundslaw@gmail.com