| | | |
|---|---|---|
| S.B., BY AND THROUGH HER | * | CIVIL ACTION |
| MOTHER, S.B. | * | |
| Plaintiff | * | NO. 21-cv-0217 |
| VERSUS | * | |
| | * | JUDGE, SECTION S |
| JEFFERSON PARISH SCHOOL BOARD, | * | MARY ANN VIAL LEMMON |
| CHRISTI ROME, | * | |
| JANINE ROWELL and | * | MAGISTRATE 2 |
| LESLEY NICK | * | DONNA PHILLIPS CURRAULT |
| Defendants | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF THE RULE 12(B)(6) MOTION TO DISMISS OF THE JEFFERSON PARISH SCHOOL BOARD and CHRISTI ROME

**MAY IT PLEASE THE COURT:**

Petitioner, S.B. through her mother S.B., is an eleven (11) year old student/child with autism, at the times alleged herein and presently as well, attending Walter Schneckenburger Elementary School. By virtue of her First Amended Complaint, plaintiff has sued in order, the Jefferson Parish School Board (JPSB), Christi Rome as Principal of Schneckenburger, in her official and individual capacities, Janine Rowell, the child's former Special Education Teacher and Lesley Nick, the child's former Special Needs Paraprofessional SNP, in their individual capacities.

From a single set of factual allegations, the plaintiff has made thirteen (13) separate claims. The First, Second, Sixth, Seventh, Eighth, Ninth and Thirteenth Claims deal with federal and U. S. Constitutional claims. Three claims, the Seventh, Eighth and Thirteenth, arise from 20 U.S.C. § 1983 and Due Process. All the rest involve purely state law claims of one type or another, none of which are brought under the Louisiana Constitution.

The JPSB and Christi Rome, are being represented herein by undersigned counsel who is

1

filing this Motion on their behalf only. Separate counsel has been retained in this matter by the JPSB, pursuant to Board Resolutions and approved by the State Attorney General, on behalf of the defendants, Janine Rowell and Lesley Nick, both employees of the JPSB. These defendants are represented by Alan Yacoubian and Randall Kleinman, respectively.

Essentially, this Complaint stems from two (2) separate alleged incidents involving the child at the school. The first involved what is described as a single incident whereby the teacher Janine Rowell slapped the plaintiff's wrists. It is specifically alleged, and taken as true, that although two (2) other SNPs in the room, only one of whom was actually employed by the JPSB, witnessed this incident, neither reported this incident and alleged abuse "to any school authorities" (Paragraphs 28 and 29). Clearly, Christi Rome as school principal is one such authority. This was on February 7, 2020 (paragraph 34), a Friday afternoon. It is further alleged that although later that afternoon one of these SNPs told her manager at the agency for which she was employed about the incident, it was not until three (3) days later, on February 10, 2020, at 11:00 AM that this manager emailed Christi Rome and informed her of the incident (paragraphs 39 and 40). By the way, this "agency" was Autism Spectrum Therapies which is not affiliated with nor employed by the JPSB. It does; however, render certain services to the child herein and other children in Jefferson Parish schools.

According to the Complaint, Christi Rome conducted an investigation on that day that she was first informed, three (3) days after the fact as admitted in the Complaint, of the incident and obtained several statements including statements from the two SNPs that were present when the incident occurred. Again, according to the Complaint, one of these SNPs said she had not witnessed Ms. Rowell slap the child but that rather she grabbed the child's wrists and used a stern voice. She did not witness any slapping. The other paraprofessional said she saw Ms. Rowell slapping the child's wrists. This same paraprofessional said she saw Ms. Rowell slap the child's wrists two (2) weeks earlier, "but had not reported the prior incident of slapping to any school authorities."

(paragraphs 58 to 62)  This is noteworthy as included in the list of school authorities to whom this was NOT reported, again is Christi Rome, the school Principal.

It should be added that despite a litany of things Christi Rome allegedly did and did not do, according to the Complaint "the police report reflects that Plaintiff's mother told the officer (Kenner Police) that she was not interested at that time, in pressing charges against Mrs. Rowell" (paragraph 57).  This was clearly a remedy that was available to the child and her mother under applicable State law in effect.  Further, according to the Complaint, the next day, Ms. Rowell was no longer in the classroom; however, Christi Rome did not suspend Ms. Rowell and instead she, Rome, referred the matter to Human Resources (paragraphs 63 and 64).  Besides no longer being in the child's classroom, Ms. Rowell was not discharged and instead she was transferred to another school. (paragraphs 65 and 66)  From this point in time until the end of the Complaint, there appear no additional factual allegations of specific acts or omissions committed by Christi Rome that relate to this particular incident, and rather only appear in the actual claims themselves. And these are allegations concerning conclusions made by plaintiff from these facts.  Further, it should be noted that at the time of the second incident, which will be discussed next, Ms. Rowell was no longer at the school and was no longer the child's teacher.

The second incident involved in the complaint allegedly occurred on November 18, 2020 (paragraph 73).  At this time, the child pinched the defendant Lesley Nick, the child's own SNP, who was employed by the JPSB, in the neck and Nick in turn grabbed the child's hand and slapped the top of it.  This incident was reported to the principal Christi Rome who called the plaintiff's mother "right away" and immediately removed Ms. Nick from the classroom.  This is another single incident occurring at the school.  There are no other allegations of specific acts or omissions committed by principal Christi Rome, nor indeed either by Janine Rowell or Lesley Nick.

Indeed, there are no other allegations at all in the Complaint referring to any other incident

occurring at the school concerning any acts committed against the child. Rather, all that is involved herein are two (2) separate and isolated acts occurring eight (8) months apart allegedly committed by two (2) separate individuals, one a teacher and the other a SNP, on the same special needs child. As concerns this second incident and Christi Rome, there are no specific allegations made against her in the factual allegations other than that when she learned of the incident, she immediately called the child's mother and removed the SNP, Lesley Nick, from the classroom, with Ms. Nick no longer working at the school. (paragraphs 77 to 79).

As stated previously, from these "factual allegations," the plaintiff asserts thirteen (13) claims against various defendants, mostly the JPSB, and in some cases against all defendants, described only as "defendants." Again, several are based upon federally protected and constitutional rights and others are based upon purely state causes of action. It is of note that the plaintiff in many instances attempts to merge the two (2). Of particular note is the fact that although many of these federal claims allege discrimination, disparate treatment, i.e. allegedly treating the plaintiff child different from others, equal protection, and the various state claims, there appear nowhere in the Complaint any plausible factual allegations that demonstrate the alleged violation(s) and/or discrimination.

As a caveat to all arguments herein, the defendants, JPSB and Christi Rome, reserve the right to yet seek dismissal of any remaining claims against them not disposed of herein, on any additional and appropriate dispositive motion(s) permitted under the Federal Rules. These defendants seriously question the plaintiff's ability to prove the elements of her claims of disability discrimination under either the Rehabilitation Act or the ADA, or various state laws, her claims under 42 U.S.C.§1983 including disparate treatment/equal protection or failure to train, and certainly a hostile education environment, and the various other state law claims relating to battery and other related claims.

**LEGAL STANDARDS**

To survive a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the plaintiff S.B. must do two (2) things. First, she must assert a plausible claim and second, she must set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under these two (2) cases the well pleaded factual allegations of the Complaint are assumed to be true. However, legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements" are not, and the claim may be subject to dismissal. *Iqbal, supra.*

Only a Complaint that alleges "enough facts to state a claim for relief that is plausible on its face" satisfies this *Twombly-Iqbal* test. *Twombly, supra.* It is insufficient for the petitioner to "plead facts that are 'merely consistent with a defendant's liability'." *Iqbal, supra.* Where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -but it has not shown-that the pleader is entitled to relief. *Iqbal, supra.* Quoting FRCP Rule 8, *Patrick v. Wal-Mart, Inc. - Store No. 155*, 681 F.3d 614, 617 (5th Cir, 2012) ("to withstand dismissal, a complaint must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'") (quoting *Iqbal, supra.*)

The court must engage in the "context-specific task" of determining whether the specific facts alleged by the petitioner give rise to a "plausible claim for relief," in light of the court's "judicial experience and common sense." *Iqbal, supra.* To state a plausible claim for relief, plaintiff's factual allegations must establish more than a "sheer possibility" a defendant has acted unlawfully. *Iqbal, supra.* In the words of the Court, "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra.* Stated differently, the court must look past the complaint's legal conclusions to identify its specific factual allegations, assume the veracity of those specific factual allegations, and then determine whether these specific factual allegations plausibly give rise to an

entitlement to relief. *Iqbal, supra*.; *Tuchman v. DSC Communications Corp*., 14 F.3d 1061, 1077 (5th Cir. 1994), wherein it is stated "We will not accept as true conclusory allegations or unwarranted deductions of fact." The crux of the matter as stated by the Court is that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual content." *Iqbal, supra*. For reasons to be shown, the plaintiff has not met this threshold on any of the claims asserted herein against any defendant, and all such claims should be dismissed with prejudice.

FRCP 8(a) also has bearing on this matter. For this Rule deals with the pleading requirements in suits against political subdivisions and individual defendants in their official capacities. See: *Anderson v. Pasadena Indep. Sch. Dist*., 184 F.3d 439 (5th Cir. 1999). Besides those Rule 12(b)(6) requirements relating to the requirement of setting forth a plausible claim for relief, pursuant to Rule 8(a) "plaintiffs must provide a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Terrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Again, the plaintiff has failed in this regard and all such claims should be dismissed with prejudice. Furthermore, a heightened pleading standard applies in order to state a claim against the defendants, including Christi Rome, in their individual capacity. That is, the plaintiff must allege specific conduct giving rise to a constitutional violation, which plaintiff has failed to do. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439.

Finally, to state a claim under 42 U.S.C. §1983, a plaintiff must satisfy three (3) elements: (1) deprivation of a right secured by the U.S. Constitution or federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Thomas v. City of New Orleans, et al.*, 883 F. Supp 2d 669 (2012) citing *Victoria W. v. Larpentar*, 369 F.3d 475 (5th Cir, 2004). In addition, a Section 1983 complaint must state specific facts, not simply legal and constitutional conclusions. *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990). This is the same standard required under Rule

12(b)(6). For reasons to be shown, the Complaint herein is replete with legal and constitutional conclusions, and devoid of any specific facts alleged that give rise to a "plausible claim for relief." As such, all of the plaintiff's claims in this court should be dismissed with prejudice.

## ARGUMENT

In the context of all of the above, it is the defendants' intention to deal with specific instances relative to the Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. However, the logical starting point is found in another part of Federal Rules, Rule 12, that has a direct bearing on whether or not these claims go any further in this Honorable Court. It is for this reason that this matter will be discussed first, despite the fact that the defendants will raise additional issues. These issues relate to specific claims made, as well as to the defense of qualified immunity for Christi Rome. It should be added that the analysis and facts set out in connection therewith are equally applicable to the entirety of the argument raised by the defendants herein, and refer to all of the defendants, even though technically the undersigned represents only two (2), the JPSB and Christi Rome.

Specifically, under Rule 12(b), it is patently obvious from this present Complaint that there is no federal jurisdiction over this entire matter. To put it simply and succinctly, there are no federal remedies available to the plaintiff from the facts alleged herein. And, even more to the point, based upon current Fifth Circuit precedent, dismissal of all of the plaintiff's federal Section 1983 claims is mandated based upon the allegations of this case as seen in plaintiff's various claims. As a corollary, many, if not all, of the plaintiff's state law claims are either legally insupportable, or should result in this court's decision to decline its pendant jurisdiction over any state law claims remaining, if any.

From the factual allegations that do appear in the Complaint, one thing is quite obvious. That is that the plaintiff is trying to morph two (2) isolated incidents of alleged corporal punishment literally into "a Federal case." This is not to suggest that the undersigned would not treat as

potentially serious any unwarranted touching of an autistic child. However, this does not mean that the incident should be treated for more than it really is. While the undersigned is mindful of the fact that some plaintiffs may perceive federal damage recovery under 42 U.S.C. §1983, which authorizes the awarding of attorney's fees from constitutional violators, potentially more generous than those under the applicable state law, that does not change the status nor nature of the present matter. More importantly, it does not change the nature and content of those same factual allegations, or rather, in the present case, the lack thereof. For, not unlike the legal standard under any Rule 12(b)(6) Motion to Dismiss, "a Section 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Angel v. City of Fairfield*, 793 F.2d 737 (5th Cir. 1986). Also, See *Fee, supra*.

As is likewise evident from the factual allegations that appear in this Complaint, the present case is nothing more than a case of potential battery by a special education teacher and an SNP on an autistic student in a Jefferson Parish school. Furthermore, as alleged in the Complaint, these two (2) batteries consisted of, in the case of the teacher, "slapping" the child's wrists, and in the case of the SNP, "grabbing the child's hand and slapping the top of it." Not to lose sight of the issue, the battery, if any, probably should not have happened, whether done as discipline or in the case of someone having just lost her cool. The real facts will bear this out. To suggest that it was perpetrated as a means of discrimination, unlawful corporal punishment, or as an indifferent, malicious, and reckless act done in order to deprive a child of her rights, including her Constitutional rights, on those alleged facts actually pleaded in the present Complaint, is a far stretch. As will be seen, the Federal Courts and in particular the Fifth Circuit have routinely recognized this fact in the area of corporal punishment in schools and ruled accordingly.

Again, the factual allegations set forth in this present Complaint at best set forth a claim of battery, perhaps one of negligent supervision, and perhaps even one of excessive or unlawful

corporal punishment. However, for reasons that have been shown and will be shown, such claims belong in the Louisiana courts, under already existing state civil and criminal law, which state law aptly provides the plaintiff with an adequate remedy. This, of course, is providing plaintiff is able to prove any properly pleaded allegations made. To put it simply, these state law claims do not justify this court in exercising its federal jurisdiction over what is no more than a corporal punishment claim which should be decided in state court. As such, leave to amend should not be granted in this case as this does not cure the problem, and would require now a second amendment.

The plaintiff has raised in her Seventh Claim a Section 1983 claim for substantive due process under the Fifth and Fourteenth Amendments alleging a claim for violation of the child's bodily integrity. She raises in her Eighth Claim a Section 1983 claim for due process under the Fourth, Eighth and Fourteenth Amendments alleging use of unjustified force against her. As stated previously herein, to state a claim under 42 U.S.C. §1983, a plaintiff must satisfy three (3) elements: (1) deprivation of a right secured by the U.S. Constitution or federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Thomas v. City of New Orleans, et al.*, 883 F. Supp 2d 669 (2012) citing *Victoria W. v. Larpentar*, 369 F.3d 475 (5th Cir. 2004).

Nevertheless, the real issue raised herein is one of corporal punishment. Although it has been argued by the defendants and will continue to be argued, that the Complaint is for the most part devoid of any plausible factual allegations, this still cannot be denied by the plaintiff. As but a few examples, one need look no further than paragraphs 19, 20, 21, 22 through 26, 68, 83, 89, 91, and 92. Clearly, the alleged initiation of corporal punishment is at the heart of this entire matter.

It is within this specific context that the defendants raise the issue of this Court's lack of jurisdiction in this matter. This applies not only specifically to the Seventh Claim, but to the Eighth and Thirteenth as well, and even to the First and Second. In claims alleging due process violations under Section 1983 involving student corporal punishment, the U.S. Court of Appeal, Fifth Circuit,

in a case already cited above, has held that "Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions." *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990). The case was out of Texas and involved a sixth-grade special education student who became disruptive during classroom instruction. In that case, corporal punishment was initiated by the school principal. There, as here, the plaintiff commenced the action pursuant to 42 U.S.C. §1983 against the school district and various educators, averring the violation of substantive due process under the Fourteenth Amendment as regards excessive corporal punishment in public schools. Also involved, as is here, were allegations of negligence, gross negligence and excessive force, presumably under the same type statutes as those Louisiana statutes invoked presently.

In arriving at that conclusion, the court noted that the state affords students post-punishment criminal or civil remedies if teachers fail to impose reasonable measures when necessary to maintain school discipline. Texas state law did provide such redress both civilly and criminally as does Louisiana state law. For instance, there are applicable statutes dealing with battery under Title 14, and similarly under Title 17, there are multiple statutes dealing with the civil side, for example, La. R.S. 17:416.1 and La. R.S. 17:416.11. As further justification for its holding, the court stated, "the Constitution is not a criminal or civil code to be invoked invariably for the crimes or torts of state educators who act in contravention of the very laws designed to thwart abusive discipline." *Fee, supra*.

The main thing to take away from the above, and the thing that has immediate application to the present inquiry is that if state law provides a remedy, the plaintiff's Section 1983 claims must be dismissed. In answer to the question of whether or not Louisiana affords such a remedy, the obvious answer is "yes."

This very same issue was recently visited by another section of this Court. This is the case of *E.H., by and through Abron v. Barrilleaux*, 2021 WL 149119 (1/15/2021). In this case, Judge Vitter presents a review of pertinent Fifth Circuit case law. In that case, as here, the plaintiff had alleged a number of state law claims, including claims for assault and battery, intentional infliction of emotional distress and abuse of a minor. Judge Vitter quoted from *Fee, supra.*, stating:

> In Fee v. Herndon, the Fifth Circuit explicitly held: "our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions." "The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due." "That is to say, the Constitution is not a criminal or civil code to be invoked invariably for crimes or torts of state educators who act in contravention of the very laws designed to thwart abusive disciplinarians.

And, after all, this is exactly what is going on in this present Complaint filed by S.B. The finding here should be the same as Judge Vitter's finding, and that is, "In short, if Louisiana state law offers Plaintiff a Remedy, then there is no constitutional claim." *E.H., by and through Abron, supra.*

Judge Vitter then went on to demonstrate how Louisiana state law does so provide. For instance, she cites from La. R.S. 17:416.1(A) which allows educators to employ other reasonable disciplinary and corrective measures to maintain order in schools, and La. R.S. 17:416.11 which allows a student to sue such educators individually where their acts were malicious and willfully and deliberately intended to cause bodily harm.

In noting that the Fifth Circuit has consistently held that the State of Louisiana affords students an adequate remedy through its tort law and statutory provisions, she cites *Flores v. School Bd. of DeSoto Parish*, 116 F. App'x 504 (5th Cir. 2004) and *Coleman v. Franklin Parish School Bd., 702 F.2d 74 (5th Cir. 1983).* In fact, she goes on to state that because her order holds only that because the Plaintiff has a remedy or remedies at state law, Firth Circuit precedent mandates the dismissal of Plaintiff's Federal Section 1983 claim. This result should be the same in the present case.

Judge Vitter also cited another case decided by this Court, namely *Thomas v. City of New Orleans*, 883 F.Supp. 2d 669 (EDLA 2012) decided by Judge Feldman. This case will be cited further herein for other reasons. However, at this point, it does bear mentioning on one point. That is, in rendering his decision, Judge Feldman found, citing from *Fee, supra.* "As Fee makes clear, 'the doctrine of substantive due process focuses expressly upon the arbitrariness of state action.' Given that Louisiana provides for adequate post-punishment relief in favor of students through its tort law, the plaintiffs cannot rely on substantive due process concerns here." In other words, Louisiana state law affords the plaintiff a remedy. The precedent in the Fifth Circuit is indeed clear, the court lacks jurisdiction over these claims. Or, in the words of Judge Vitter, plaintiff's claims, including that for due process, brought pursuant to 42 U.S.C. §1983 must be dismissed.

As further concerns plaintiff's substantive due process claims against the JPSB, if any, these, too should be dismissed anyway. Substantive due process seeks to prevent government power being used for the purpose of oppression. *Daniels v. Williams*, 474 U.S. 327 (1986). In the present case, the Complaint is totally devoid of any allegations brought against any defendant, and in particular against Christi Rome, which evidence on her part the egregious and shocking conduct required to show her violation of the plaintiff's substantive due process rights. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

As concerns the remaining state law claims, if any have been adequately pleaded in this Complaint, which are pendant state law claims, Judge Vitter addressed this issue in her opinion as well. Therein she stated, citing *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc*., 554 F.3d 595 (5th Cir. 2009), "The district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction." Explaining that a district court enjoys wide discretion in determining whether to retain jurisdiction, she further stated "The general rule is that a court should decline to exercise jurisdiction over

remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive, and (the Fifth Circuit) must review the district court's decision in light of the specific circumstances of the case at bar." It is respectfully suggested that insofar as this case is concerned, this court should decline to exercise its jurisdiction on pendant state claims where the reason not to exercise federal jurisdiction is founded upon the fact that this mandatory declination of federal jurisdiction is based upon the reason that adequate state law remedies exist. Without deigning to impugn the ability of this Court to decide Louisiana State law issues, it is suggested that such decisions are best left up to the state courts.

Further elaborating on the above, according to La. R.S. 17:416.1 Corporal Punishment means "using physical force to discipline a student, with or without an object. . . .". The plaintiff's First Amended Complaint now alleges not only was the plaintiff a victim of corporal punishment, but also of unlawful corporal punishment. All of the allegations describing the events leading up to and constituting this unlawful corporal punishment clearly demonstrate that the "slapping" incidents resulted from attempts to actually discipline this "unruly" 11 year old autistic student. It cannot be doubted that the corporal punishment instituted herein was, as per the plaintiff's own "well pleaded" facts, a method of discipline, albeit in the form of unlawful and excessive corporal punishment.

The relevance of such allegations is made abundantly clear when viewed in light of the case of *Moore v. Willis Independent School District*, 233 F.3d 871 (5 Cir. 2000). The ultimate holding of this case is on all fours with the present inquiry and with the defendants' present Motion to Dismiss. That is, according to the Court, it is the law of the Fifth Circuit that "as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." This certainly includes in the present case the JPSB as well as its three (3) employee defendants Rowell, Nick and Rome.

13

In that light, the Court goes on to state that "Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of those injuries or the sensitivity of the student, do not implicate the due process clause *if the forum state affords adequate post-punishment civil or criminal remedies* for the student to vindicate legal transgressions." Again, plaintiff, pursuant to her own pleadings cannot deny that these incidents involve corporal punishment. This is so whether the allegations involve unlawful corporal punishment, or the unjustified force described in paragraph 116 of the Complaint. In *Moore, supra*., the court noted that Texas law forbids excessive corporal punishment. Louisiana state law also prohibits excessive corporal punishment; however, Louisiana law also forbids all forms of corporal punishment for students with an exceptionality as the plaintiff, or the "unlawful" corporal punishment described in the Complaint, and for which Louisiana state law also provides a remedy.

The court further stated "If the Moores have an adequate remedy under Texas law for Aaron's alleged mistreatment, they cannot state a constitutional claim and their federal claims must be dismissed." *Moore, supra.* The court, in its conclusion, affirmed the dismissal of the Section 1983 claims against all defendants, and then stated "As this leaves no remaining federal claims involved in the case, we decline to exercise jurisdiction under 28 U.S.C. §1367(c)(3) over the supplemental state-law claims." *Moore, supra.* That is precisely the case in this present matter before this court. By plaintiff's own admission she has failed to state a constitutional claim for substantive due process. It is respectfully suggested that this Honorable Court should rule so.

Making allegations such as those found in paragraphs 19 through 26, including those relating to mandatory reporting of alleged abuse and the consequences thereof for defendants Rowell, Nick and Rome, while certainly is noteworthy, such allegations have no bearing on the fact that what these allegations do demonstrate, is exactly what the defendants have argued herein. That is, in relation to corporal punishment, where there are present adequate state remedies, this Honorable Court lacks

subject matter jurisdiction.  In fact, the plaintiff has gone even further by actually alleging and directly making reference in the Complaint itself to some of those very same state statutes, in paragraphs 19, 22, 23, and 24, that demonstrate that Louisiana does in fact have remedies in place for the very violations alleged by the plaintiff to be within this Court's purview.  Given the above, even were this Court not to see fit to follow existing Fifth Circuit precedent, and to deny the request to dismiss, this does not end the present inquiry nor resolve the other issues sought to be raised by the present Motion.  Those other specific federal claims raised in the Complaint warrant discussion. Towards that end, the defendants submit the following.

Plaintiff has made claims of discrimination under Section 504 of the Rehabilitation Act in the First Claim, and discrimination made under the ADA in the Second Claim.  As has been shown herein, the Complaint consists of legal conclusions and recitals of the elements of a cause of action, all of which are supported by mere conclusory statements.  The Complaint is devoid of any factual allegations that tend to show the how and why of the alleged discrimination.  The Complaint is void of any plausible factual allegations tending to show the basis of the legal conclusions that are being made.  The allegations in these two (2) claims consist of the very same things.

Essentially, the allegation of the two (2) claims is that the defendants violated the Rehabilitation Act and the ADA because the JPSB discriminated against the plaintiff by allowing a hostile education environment, albeit, as alleged, on the basis of her disability.  Again, no plausible facts tending to prove any of this are evident from the Complaint.  The defendants cannot and should not be placed in a position to presume what the plaintiff means.

The Fifth Circuit has held that the ADA and Section 504 of the Rehabilitation Act do not create general tort liability for educational malpractice.  See *D.A. ex rel Latasha A. v. Houston Independent School District*, 629 F.3d 450 (2010).  This is precisely what the plaintiff seeks to do. Further, in order to show such discrimination, the plaintiff must show that the school district acted

with discriminatory animus with respect to the child's disability.

To establish such a disability based discrimination claim, the plaintiff must show that she has a disability, that because of it she is being denied programs or is otherwise being discriminated against and that the discrimination is by reason of the disability. *Hale v. King*, 642 F.3d 492 (5th Cir. 2011). Compensatory damages under both the ADA and the Rehabilitation Act are only available where there is intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567 (5th Cir. 2002). There must be some evidence that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program. *Marvin H. v. A.N. Indep. Sch. Dist.*, 714 F.2d 1348 (5th Cir. 1983). Although the claims of plaintiff are indeed couched in terms of "educational malpractice, " i.e., providing or somehow facilitating a hostile education environment," there appear in the Complaint no reasons at all why this is supposedly the case, much less having pleaded any discriminatory factual allegations showing why this is the case. The plaintiffs have neither pleaded nor shown any facts that demonstrate discriminatory animus. Again, this goes back to those standards required to survive a Motion to Dismiss for failure to state a claim upon which relief can be granted. Having failed to do so, on this separate level, the claims under the ADA and the Rehabilitation Act should be dismissed with prejudice.

Plaintiff has filed its Sixth Claim with the heading "Failure to Provide a Free and Appropriate Public Education (FAPE)." Therein the plaintiff alleges that the JPSB has violated the Individuals with Disabilities Education Act (IDEA), which is cited by plaintiff as 20 U.S.C. §1400, *et seq.* In this Sixth Claim, there are no factual allegations showing how or why the defendant has done so. In fact, there is no information at all pertaining to any action of the JPSB. Rather, the claim refers back to all of the "allegations" of the Complaint. It goes without saying that a simple reading of all of the factual allegations of the Complaint fail to set out any facts whereby or specifically how this

defendant has violated the IDEA. Plaintiff has failed to state enough facts to state a claim for relief under the IDEA that is plausible on its face. Again, there appear in this Complaint, insufficient facts to demonstrate a right to relief above the speculative level. Dismissal is in order.

In general terms, 20 U.S.C. §1414 pertains to evaluations, eligibility determinations, individual education programs, and educational placements that are required of public education agencies relative to the placement and teaching of public school students with special education needs and/or disabilities. Under these provisions, without seeking to simplify the Act, the JPSB has certain enumerated responsibilities owed to such students. Under 20 U.S.C. §1415, any state educational agency or local educational agency, of which the JPSB is one, that receives assistance has an affirmative duty to establish and maintain procedures to insure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free and appropriate public education. Involved in all of the above are matters of evaluation of disability, proper placement by way of an Individualized Education Program (IEP) for each child so identified, and accordingly, appropriate educational placement for that child. In other words, typically, under this Act the JPSB is required to provide this child with a free and appropriate public education (FAPE) that is designed to meet this particular child's own special needs through the formulation and fulfillment of that IEP. That IEP is formulated through the child's parent and the school system through its professionals.

No factual allegations at all appear in the Complaint that demonstrate an alleged violation of any of the above. The Complaint is devoid of any factual allegations at all, and simply draws a conclusion, presumably based upon whatever facts are described in the Complaint pertaining to the alleged unlawful and excessive corporal punishment alleged therein, that the JPSB has violated IDEA. In this regard alone, the Complaint utterly fails to state a cause of action under a Rule 12(b)(6) Motion to Dismiss analysis.

More to the point, nowhere in the complaint is it alleged that plaintiff at any time prior to this Complaint, complained of a violation of the IDEA, which is her right. The parent is given the right or opportunity to present her complaints relative to the identification, evaluation, or education of the child, or indeed the providing of a free and appropriate public education to the child. When such a complaint is filed, the parent and child are entitled to an impartial hearing process with the school board, followed by an appeal if necessary to the appropriate state educational agency. Only then, pursuant to Section 1415(e)(2) can the plaintiff bring a civil action. (20 U.S.C. §1415)

As concerns this civil action, it has been determined that it is beyond a doubt that the statute provides that a plaintiff must first exhaust the state administrative remedies before bringing such an action in federal court, and that this requirement is jurisdictional. *Gardner v. School Board Caddo Parish*, 958 F.2d 108 (5th Cir. 1992). Again, no such factual allegations appear in the Complaint. Clearly, the plaintiff, having failed to exhaust her administrative remedies, cannot presently bring this claim. The court lacks subject matter jurisdiction and the Complaint, as it pertains to this particular Sixth Claim under IDEA should be dismissed. Admittedly, the Supreme Court has recognized that this administrative review process could be bypassed where exhaustion would be futile or inadequate. *Honig v. Doe,* 484 U.S. 305,327 (1988). However, the Complaint is totally devoid of any such factual allegation as well.

Finally, plaintiff has sued Christi Rome, the principal of Schneckenburger in her individual and official capacities. For reasons to be shown, Christi Rome is entitled to qualified immunity herein, which likewise serves as a basis for the present Rule 12(b)(6) Motion to Dismiss.

A good analysis of qualified immunity has been set forth by Judge Martin Feldman in *Thomas v. City of New Orleans, et al.*, 883 F. Supp 2d 669, and will be referenced freely with proper citation. When plaintiffs seek money damages from government officials for alleged violations of constitutional or statutory rights, officials in their official capacities may invoke the defense of

qualified immunity. Further, because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation." *Thomas v. City of New Orleans, et al.*, 883 F. Supp 2d 669 (2012) citing *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed. 2d 589 (1911)(per curiam).

According to *Thomas, supra*., qualified immunity shields government officials from civil damages liability, the U.S. Supreme Court has recently reiterated, unless the official violated a statutory or constitutional right that was clearly established that (sic. at) the time of the challenged conduct," citing *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). Further citing *Pearson v. Callahan*, 555 U.S. 223 (2009), "this doctrine protects government officials against individual civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " What is next stated by Judge Feldman bears particular significance for this present inquiry as concerns the qualified immunity that should be granted to Christi Rome. For it is then stated that, "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they preform their duties reasonably." further citing *Pearson, supra*.

Again, from *Thomas, supra*., to put it another way, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,' so we do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate,'" citing *Morgan v. Swanson*, 659 F.3d 359, 370-71 (5th Cir. 2011)(en banc). Further, from *Thomas, supra*. "once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. See *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." See also *McClendon v. City of Columbia*, 305

F.3d 314, 323 (5th Cir. 2002)(en banc). Following from all the above, as also found in *Thomas, supra*. is what lies at the heart of the defense of qualified immunity raised herein on behalf of Christi Rome. Namely, "A plaintiff must establish that the defendants were either personally involved in the deprivation or that their wrongful actions were causally connected to the deprivation." *Thomas, supra.*, citing *James v. Texas Collin Co.*, 535 F.3d 365, 373 (5th Cir. 2008).

The allegations of the present Complaint as they relate to the specific actions of Christi Rome fall short of making such a showing. These allegations fail to state, nor do they aver, that Christi Rome discriminated against anyone. They fail to aver that she laid hands on the child, or in fact did anything to the child or her mother, nor that she even administered corporal punishment. They fail to aver that Christi Rome had any role in the creation of Jefferson Parish School Board policy. Her omission and/or commission is alleged to be that as a mandatory reporter, she failed to report the unlawful corporal punishment described by plaintiff as abuse of the child. Of course, there are other allegations relating to negligent training and the like, all of which including the above really are state law claims. For these and the other reasons set forth herein, these claims against Christi Rome should be dismissed with prejudice based upon her invoking her qualified immunity.

Specifically, the Twelfth Claim for the Failure to Supervise and the Thirteenth Claim for failure to train under 42 U.S.C. §1983 is brought against the JPSB and Christi Rome. As these two (2) claims relate to Christi Rome, they should be dismissed with prejudice on the basis of her qualified immunity. Taking the Thirteenth Claim first, Christi Rome is admittedly only a principal. In addition, this claim is specifically brought under 42 U.S.C. §1983. In paragraph 163, the plaintiff says "The defendants' training policies with regard to corporal punishment for special education students are insufficient." In paragraph 164, the plaintiff says "The defendants were deliberately indifferent to this insufficiency." In paragraph 165, the plaintiff says "The insufficiency of the policies was the moving force behind the violation of plaintiff's constitutional rights." In paragraph

167, the plaintiff says "The Defendants had actual or constructive notice of a pattern of similar constitutional violations caused by the policies." Nowhere in any of these allegations nor in the remaining factual allegation of the Complaint, is it alleged that Christi Rome, the principal, had anything at all to do with the creation of any policy of the JPSB

Further, in the Preliminary Statement part of the Complaint, in paragraph 1, plaintiff alleges "it is the policy of the Jefferson Parish Public School System to simply transfer teachers who hit students to another school." Besides the fact that this is just plain wrong and has nothing to do with the stated policy of the JPSB which policy is easily found on its website, Christi Rome, the Principal, does not and did not make policy. By plaintiff's own allegations and admission, Christi Rome is the Principal of an elementary school. By plaintiff's own allegations, the JPSB is the policy maker here. Yet, Christi Rome, the Principal of Schneckenburger is sued in her official and individual capacities (paragraph 11).

There appear no allegations that Christi Rome, the principal, either made or was responsible for the creation of school system training policies relative to corporal punishment for special education students, nor that she had anything at all to do with the adoption of any such policies. In fact, the insufficiencies of policies that Christi Rome has never been alleged to have adopted, formulated or created, have been alleged to be the "moving force behind the violation of Plaintiff's constitutional rights" (paragraph 145). In paragraph 66 of the Complaint, it is alleged that Christi Rome called the plaintiff's mother right away after the second alleged incident, and immediately removed Ms. Nick (the SNP) from the class. These alleged actions on the part of Christi Rome on their face are not actions that either allege or demonstrate that she violated clearly established statutory or constitutional rights, or which a reasonable person would have known. This does not describe, nor is it alleged, action that evidences on her part maliciousness or indifference, or that she knowingly violated the law. These actions described by the plaintiff herself evidence that Christi

Rome acted reasonably and properly. Indeed, in the prayer, in no. 4, it is prayed that Christi Rome be found liable, not for making discriminatory policies, but for "negligence and failure to train." This allegation should absolve her from individual liability as well.

Taking all of these factual allegations as true, at the very least, the Thirteenth Claim as contained in this Complaint has stated no claim against Christi Rome for which relief can be granted for her having allegedly violated plaintiff's constitutional rights under 42 U.S.C. §1983. More importantly, for her defense of qualified immunity, the same holds true, that is, this claim should be dismissed. Again, as concerns the Motion to Dismiss under Rule 12(b)(6), the court must engage in the "context-specific task" of determining whether the specific facts alleged by the petitioner give rise to a "plausible claim for relief," in light of the court's "judicial experience and common sense." It is certainly within the purview of this Honorable Court's "judicial experience and common sense" to note or take notice that an elementary school principal, namely Christi Rome, has nothing to do with making policy for the Jefferson Parish School Board relative to the training of anyone. She may be negligent in other respects, which is denied. However, negligence is not the same as intentional discrimination. However, one other thing is clear, nowhere in the Complaint has this factual basis ever been alleged by plaintiff to support the allegations made in the Complaint. What is clear is that based on this Court's judicial experience and common sense, there is no way that school principal Christi Rome is a policy maker for the JPSB. Christi Rome certainly is entitled to qualified immunity in connection with the claims herein.

Clearly, the JPSB is the policy maker, not the principal Christi Rome. From the previous cases cited, to overcome or rebut the defense of qualified immunity invoked by a defendant, a plaintiff must establish that the defendants were either personally involved in the deprivation or that their wrongful actions were causally connected to the deprivation." *Thomas, supra.*, citing *James v. Texas Collin Co.*, 535 F.3d 365, 373 (5th Cir. 2008). Christi Rome was not personally involved

in policy making for the Jefferson Parish School Board. This is neither alleged in the Complaint nor is it found anywhere therein. Plaintiff has not met this burden, thus requiring dismissal of the claim.

The same is true relative to the Twelfth Claim which relates to Christi Rome's failure to supervise/train. It is alleged that the "defendants" lumped together as one "had a duty to train and supervise their employees." Here, as in the Thirteenth Claim, the claim is asserted solely against the JPSB and Christi Rome. There are no allegations in the Complaint that Christi Rome has or had a duty to train anyone. Using the same analysis referenced above, to the extent that this failure to train is brought under 42 U.S.C. §1983, it, too, should be dismissed, there appearing no factual allegations that Christi Rome was either responsible for training or had a duty to train employees or otherwise failed to train those employees.

This same analogy can be applied to the entirety of the claims made herein against the JPSB through any of its employees, in this case, those other particular employees being Janine Rowell, the teacher, and Lesley Nick, the SNP. Undersigned counsel brings this Motion solely on behalf of his clients, the JPSB and Christi Rome. However, there are allegations contained in the Complaint against these other named employees through which plaintiff seeks to impose liability on these two (2) defendants, including the JPSB's alleged vicarious liability in paragraph 88. Given the contents of previous Motions to Dismiss filed by those defendants in connection with the original Complaint, it is clear that similar motions will be filed as concerns the Amended Complaint. Undersigned counsel adopts any and all argument consistent with its argument herein and not in contravention of same, to be contained in those motions as its own, and so prays. And, if this be the case, and the Court sees fit to grant those Motions to Dismiss, thereby dismissing all or some of the claims brought against those defendants, then any such claim which has been made herein against the JPSB or Christi Rome based on the actions of these two (2) employees, should likewise be dismissed against the JPSB and Christi Rome, and these defendants so pray.

## **CONCLUSION**

For the reasons set forth herein, this Court should decline to exercise its jurisdiction in this matter as concerns all of the plaintiff's constitutional and federal claims, as the Louisiana state courts afford a remedy for all the alleged violations and claims set forth in the Complaint. Certainly, the Court should dismiss at a minimum all of plaintiff's due process claims, including substantive due process under 42 U.S.C. §1983. The same is true of the remaining federal claims for the reasons set forth herein. The Court should deny the exercise of its jurisdiction over any and all pendant state claims asserted herein, and plaintiff should be made to pursue her remedies, if any, in state court.

In addition, for the further reasons set forth herein, this Court should dismiss with prejudice those of plaintiff's claims discussed above in their entirety, including but not limited to the First, Second, Sixth, Twelfth and Thirteenth Claim, and grant Defendants all the relief to which they are entitled and for which they have sought in this Motion. This includes any claims of discrimination made under the ADA, the Rehabilitation Act and IDEA. The JPSB as well as Christi Rome should be dismissed as to those claims as prayed for herein, whether same results in the dismissal of the entire claim made herein or not. These defendants should be dismissed as parties to this action.

Respectfully submitted,
**GRANT & BARROW, APLC**

BY: *s/Olden C. Toups, Jr.*
    **OLDEN C. TOUPS, JR. T.A.** (#12881)
**BRAD J. GEGENHEIMER** (#27475)
**GLENN D. PRICE, JR.** (#27610)
Attorneys for Defendants
238 Huey P. Long Avenue
P. O. Box 484
Gretna, Louisiana 70054
Telephone: (504) 368-7888
Telecopier: (504) 368-7263
Email: otoups@grantbarrow.com
       bradg@grantbarrow.com
       gprice@grantbarrow.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **S.B., BY AND THROUGH HER** | * | **CIVIL ACTION** |
| **MOTHER, S.B.** | * | |
| **Plaintiff** | * | **NO. 21-cv-0217** |
| **VERSUS** | * | |
| | * | **JUDGE, SECTION S** |
| **JEFFERSON PARISH SCHOOL BOARD,** | * | **MARY ANN VIAL LEMMON** |
| **CHRISTI ROME,** | * | |
| **JANINE ROWELL and** | * | **MAGISTRATE 2** |
| **LESLEY NICK** | * | **DONNA PHILLIPS CURRAULT** |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading is a true and correct copy of the pleading that was electronically filed with the Clerk of Court through the CM/EMF system which will send electronic copies to all counsel of record and was served upon the following:

> Chris Edmunds
> 4937 Hearst Street, Suite 2F
> Metairie, LA 70001
> **Counsel for Plaintiff**

by telecopier, emailing, hand delivery and/or by depositing same in the United States mail, postage prepaid and properly addressed in accordance with the Federal Rules of Civil Procedure on this 18th day of June, 2021.

> *s/Olden C. Toups, Jr.*
> **OLDEN C. TOUPS, JR.**